# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 91-CA-01216-SCT

***DAVID PANNELL, AS ADMINISTRATOR OF THE ESTATE OF SHELLY PANNELL, DECEASED; DAVID PANNELL AND BETTY PANNELL, INDIVIDUALLY, AS WRONGFUL DEATH BENEFICIARIES OF SHELLY PANNELL***

***v.***

***BEVERLY GUESS, LISA THOMPSON, LANA PANNELL AND MARK PANNELL***

| | |
|---|---|
| DATE OF JUDGMENT: | 9/17/91 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS, JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN LEROY LONG |
| ATTORNEY FOR APPELLEES: | THOMAS E. CHILDS, JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND REMANDED IN PART - 3/28/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/18/96 |

**EN BANC.**

**DAN M. LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a September 17, 1991, ruling of the Lee County Chancery Court in which the chancellor held that Miss. Code Ann. § 11-7-13 (1972) required that the insurance proceeds negotiated from a wrongful death action be distributed equally among the deceased's six statutory wrongful death beneficiaries. The chancellor also held that the contingent fee agreement signed by David Pannell, the deceased's father, with attorney John Long did not satisfy the requirements of Uniform Chancery Court Rule 6.12, which requires court approval of such contracts, and, thus, the contingent fee agreement did not bind any of the wrongful death beneficiaries except David Pannell. Thereafter, the Appellants filed a motion for reconsideration which was subsequently overruled. Appellants, aggrieved by the chancellor's ruling, assign as error the following:

**1. WHETHER OR NOT THE CHANCERY COURT OF LEE COUNTY, MISSISSIPPI, ERRED IN ITS INTERPRETATION OF SECTION 11-7-13, MISSISSIPPI CODE**

ANNOTATED, AS AMENDED.

**2. WHETHER OR NOT THE CHANCERY COURT OF LEE COUNTY, MISSISSIPPI, ERRED IN FAILING TO APPROVE THE CONTINGENT FEE CONTRACT OF THE ATTORNEY FOR THE ESTATE OF SHELLY PANNELL.**

## I.

## FACTS

¶2. On or about March 17, 1990, Shelly Pannell, an unmarried minor, was killed in an automobile accident when the car in which she was a passenger, driven by Raymond Griffin, Jr., collided with another vehicle. Shelly was survived by her mother (Betty), father (David) and four half-siblings from her father's previous marriage (hereinafter Shelly's half-siblings).

¶3. After Shelly's death, David Pannell retained John Long to pursue a wrongful death action against Griffin. David Pannell petitioned the Lee County Chancery Court to appoint him administrator of his deceased daughter's estate, and this petition was granted. Afterward David Pannell, through his attorney, John Long, initiated negotiations with Griffin's insurance company seeking damages for Shelly's wrongful death. Within two weeks of being retained by David Pannell to begin settlement negotiations, Long was able to negotiate a $150,000 settlement offer from Griffin's insurer.

¶4. On February 1, 1991, the chancellor authorized the chancery clerk to receive $150,000 from Griffin's insurance company into the registry of the court pending settlement of a doubtful and disputed claim. The $150,000 was held in the registry of the court pending a determination of Shelly Pannell's wrongful death beneficiaries.

¶5. A hearing was held on April 8, 1991, to determine Shelly's wrongful death beneficiaries. The lower court, pursuant to Miss. Code Ann. § 11-7-13, found that Shelly's wrongful death beneficiaries were: (1) Betty Pannell (her natural mother), (2) David Pannell (her natural father), (3) Beverly Guess (Shelly's half-sister through her father's previous marriage), (4) Lisa Thompson (Shelly's half-sister through her father's previous marriage), (5) Lana Pannell (Shelly's half-sister through her father's previous marriage), and (6) Mark Pannell (Shelly's half-brother through her father's previous marriage). At the April 8, 1991, hearing, all six of Shelly's wrongful death beneficiaries agreed to settle the wrongful death claim against Griffin for the $150,000 that was being held in the registry of the court. However, at that same hearing, David and Betty Pannell then took the position that Shelly's half-siblings (David's children by his previous marriage) were not entitled to any of the proceeds. Not surprisingly, Shelly's half-siblings disagreed with them and hired their own attorney to represent them in any further matters dealing with the distribution of the wrongful death proceeds.

¶6. After the April 8,1991, developments, Shelly's half-siblings petitioned the chancery court to order an equitable distribution of the settlement proceeds among Shelly's parents and themselves. In turn, attorney John Long sought the chancery court's enforcement of the contingency fee contract he had entered into with David Pannell. Long argued that the contingency fee agreement of January 22, 1991, was binding on all of Shelly's wrongful death beneficiaries.

¶7. A hearing on these matters was held July 19, 1991. At the hearing Shelly's half-siblings claimed Miss. Code Ann. § 11-7-13 provided for an equal distribution of the insurance settlement, and, thus, they were

each entitled to one-sixth of the $150,000. The chancellor looked to the wording of the statute and determined that in the case *sub judice* the wrongful death statute provided for equal distribution of the proceeds. Accordingly, on September 17, 1991, the lower court entered a decree authorizing and directing the clerk of the court to set aside $1,078.00 for payment of statutorily designated expenses and to distribute the remainder of the $150,000 settlement among the six wrongful death beneficiaries.

¶8. On September 26, 1991, David Pannell, as administrator of Shelly's estate, filed a motion for the court to reconsider its September 17, 1991, decree. At the November 6, 1991, hearing on that motion, the chancellor listened to argument from both sides and then ruled, once again, that the statute mandated that each wrongful death beneficiary receive an equal share of the insurance settlement. The lower court held that there was no authority in the statute to allow the chancellor to hold an evidentiary hearing to determine how the proceeds of the settlement should be disbursed. Likewise, the lower court held that the contingent fee contract between David Pannell and Long was not binding upon the rest of the beneficiaries since they had not consented to or signed said contract.

## DISCUSSION

## II.

## 1. WHETHER OR NOT THE CHANCERY COURT OF LEE COUNTY, MISSISSIPPI, ERRED IN ITS INTERPRETATION OF SECTION 11-7-13, MISSISSIPPI CODE ANNOTATED, AS AMENDED.

## STANDARD OF REVIEW

¶9. Upon appellate review, this Court will not reverse the chancellor's decision unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Hill v. Southeastern Floor Covering Co.*, 596 So. 2d 874, 877 (Miss. 1992). In the case *sub judice*, the question is whether the lower court applied the correct legal standard, and, if so, did the lower court correctly apply the standard. This Court reviews questions of law *de novo*, and we will reverse for erroneous interpretations or applications of the law. *Bank of Mississippi v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990).

## WRONGFUL DEATH

¶10. Mississippi's wrongful death statute, Miss. Code Ann. § 11-7-13, created a cause of action unknown to the common law. The wrongful death action is not part of the estate of the deceased, *Partyka v. Yazoo Development Corp.*, 376 So. 2d 646, 650 (Miss. 1979) (citing *Boyd v. Austin Admrs*, 218 So. 2d 11, 15 (Miss. 1969)), and only those individuals listed in the wrongful death statute may bring this independent cause of action. *Partyka,* 376 So. 2d at 650 (citing *Hasson Grocery Co. v. Cook*, 196 Miss. 452, 459, 17 So. 2d 791 (1944)). On appellate review, we strictly construe Mississippi's wrongful death statute. *Smith v. Garrett*, 287 So. 2d 258, 260 (Miss. 1973).

¶11. The case *sub judice* initially started out as a wrongful death action. Shelly Pannell was killed when the car she was a passenger in was involved in an accident. However, because a settlement agreement with the driver's insurer was approved by all of Shelly's beneficiaries, no wrongful death suit was actually filed by any of them.

¶12. All of Shelly's beneficiaries agreed that they would settle all claims against Griffin for $150,000.00. The lower court approved this settlement, and neither Shelly's parents nor her half-siblings ever had to prove damages for loss of companionship or pain and suffering. *See Jones v. Shaffer*, 573 So. 2d 740, 743 (Miss. 1990).

¶13. In the case *sub judice*, the issue below was how to disburse the insurance settlement funds among Shelly's six wrongful death beneficiaries. David and Betty Pannell first argued that the half-siblings were not entitled to any of the wrongful death proceeds. As a fall-back position, they argued that Shelly's half-siblings were not entitled to share equally in the proceeds.

¶14. Notwithstanding these arguments, the chancellor looked to the wrongful death statute to determine how the funds were to be disbursed. The statute provides in relevant part:

> . . . .
>
> In an action brought pursuant to the provisions of this section by the widow, husband, child, father, mother, sister or brother of the deceased, or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty, whether an estate has been opened or not. Any amount, but only such an amount, as may be recovered for property damage, funeral, medical or other related expenses shall be subject only to the payment of the debts or liabilities of the deceased for property damages, funeral, medical or other related expenses. All other damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased, except as hereinafter provided, and such damages shall be distributed as follows:
>
> **. . . if the deceased has no husband, nor wife, nor children, the damages *shall* be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death . . . . There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree.**

Miss. Code Ann. § 11-7-13 (Supp. 1991) (emphasis added).

¶15. The lower court interpreted the language of the wrongful death statute and ordered that $1,078.00 of the wrongful death settlement be set aside for payment of medical expenses and other expenses related to Shelly's death. Then the lower court, pursuant to Miss. Code Ann. § 11-7-13 (Supp. 1991), ordered that the balance of the wrongful death settlement be distributed equally (a one-sixth share) to Shelly's six wrongful death beneficiaries. David and Betty argue that this distribution was erroneous and that the lower court should have held a hearing and required Shelly's half-siblings to prove their losses suffered as a result of Shelly's death. We disagree.

¶16. Contrary to Appellants' argument, the wrongful death statute does not provide that the lower court may conduct a hearing to determine how to divide the proceeds. In fact, the statute provides that the funds "shall be equally distributed" (emphasis added). A basic tenet of statutory construction is that "shall" is mandatory and "may" is discretionary. *Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1027 (Miss. 1990); *Murphy v. State*, 253 Miss. 644, 649, 178 So. 2d 692 (1965).

¶17. In the case at bar, Shelly was not survived by a husband or children. Therefore, under Miss. Code Ann. § 11-7-13 (Supp. 1991), the chancellor had no choice but to distribute the insurance settlement proceeds to Shelly's father, mother, half-sisters and half-brother, equally. Accordingly, we cannot say that the chancellor's refusal to hold a separate hearing in which each wrongful death beneficiary could attempt to prove his or her individual damages (and therefore, the right to receive a larger or smaller portion of the insurance proceeds) was erroneous.

¶18. David and Betty Pannell do not cite any Mississippi case law or statutory law that would allow or require the lower court to conduct a hearing at which the wrongful death beneficiaries would be required to "justify" their damages. Moreover, this Court could find no such authority under our statutory or case law. Therefore, we find that the lower court correctly applied Miss. Code Ann. § 11-7-13. Thus, there is no merit in this assignment of error.

### III.

### 2. WHETHER OR NOT THE CHANCERY COURT OF LEE COUNTY, MISSISSIPPI, ERRED IN FAILING TO APPROVE THE CONTINGENT FEE CONTRACT OF THE ATTORNEY FOR THE ESTATE OF SHELLY PANNELL.

¶19. On January 22, 1991, David Pannell entered into a contingency fee contract with Long. Quite simply, this contract provided that Long would be paid one-third of any recovery he received on behalf of David Pannell against Raymond Griffin and Griffin Motors. The contingency fee contract in dispute was signed by David Pannell and by Long. None of the other parties to this litigation signed this contract. The contract does not indicate that David Pannell signed in his representative capacity as the administrator of the estate of Shelly Pannell.

¶20. The court below held that the contingency fee agreement bound David Pannell alone and refused to allow Long to collect any monies from Shelly's half-siblings. The record indicates that Shelly's mother and half-siblings approved the $150,000 wrongful death settlement negotiated by Long with Griffin's insurance company. However, the record does not indicate that Shelly's half-siblings had knowledge of the contingency fee agreement, much less approved of the agreement. Nonetheless, Shelly's half-siblings approved of the amount of the settlement negotiated by Long and gained a financial benefit from his labor. Therefore, we hold that the chancellor should have allowed Long to prove that he was entitled to some compensation from Shelly's mother and half-siblings for his work in negotiating the settlement from which they derived financial benefit.

¶21. Clearly, Pannell did not sign the contract as administrator of the estate of Shelly Pannell, nor did any of the other beneficiaries sign the contingent fee agreement. There simply is no indication that David Pannell signed the agreement in his representative capacity and was acting for the benefit of the others in a legal or representative capacity. *Hill v. James*, 252 Miss. 501, 508, 175 So. 2d 176 (1965). David Pannell's signature alone on the contingent fee contract does not bind Shelly's mother or half-siblings to its terms. *C.f. Hill v. Consumer Nat. Bank*, 482 So. 2d 1124 (Miss. 1986) (An authorized representative who signs his own name to an instrument is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity). Since an agreement for a contingent fee requires approval by the chancellor, the one-third contingency fee may be questioned as to whether it constituted reasonable compensation for the services rendered and expenses incurred up to April 8, 1991.

*See* Miss.Unif.Chan.Ct. R. 6.12; *Ralston v. Bank of Clarksdale*, 188 Miss. 345, 352, 194 So. 923 (1940) (discussing factors considered by chancery court in fixing reasonable compensation); *Brown v. Franklin*, 166 Miss. 899, 145 So. 752 (1933). However, this Court has held that "a court may not make a new contract for the parties or rewrite their contract under the guise of construction." *Travelers Indemnity Co. v. Chappell*, 246 So. 2d 498, 510 (Miss. 1971) (quoting 17 Am. Jur. 2d *Contracts* § 242 (1964)). In the case *sub judice*, neither the half-siblings nor Shelly's mother signed the contingency fee contract. However, they derived benefit from Long's efforts and acquiesced to the amount negotiated by Long with Griffin's insurance company. It would have been a far better practice to have the contract approved in advance; however, this is not always possible.

¶22. On remand, the reasonableness of the contingency fee should be examined in light of the facts of this case. In the event the fee is found to be unreasonable, the chancellor may consider restructuring the percentage of recovery to which Long is entitled under these circumstances. However, the chancellor may consider all factors normally utilized to determine a reasonable fee, and if he should find that the contingency fee was not reasonable under the facts of this case, then he may assess a fee based on *quantum meruit*. *Duggins v. Guardianship of Washington*, 632 So. 2d 420, 431 (Miss. 1993); *Tyson v. Moore*, 613 So. 2d 817 (Miss. 1992).

## CONCLUSION

¶23. David and Betty Pannell's argument that the chancellor erred in refusing to hold a hearing at which they could prove that they were each entitled to more than the one-sixth share of the insurance proceeds is not supported by Miss. Code Ann. § 11-7-13 (1972) or by our case law. Accordingly, we find their first assignment of error to be without merit. However, we do find that Long is entitled to a hearing to attempt to prove his right to some compensation from Shelly's mother and half-siblings for his work in negotiating the $150,000 wrongful death settlement. Therefore, we affirm the lower court in part and reverse and remand in part for action not inconsistent with this opinion.

¶24. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND SMITH, JJ., CONCUR. ROBERTS AND MILLS, JJ., NOT PARTICIPATING.**