ISHEE, J.,
for the Court.
¶ 1. On a Petition to Pay Escrow Funds filed by John Burns (Burns), the Chancery Court for the Fust Judicial District of Hinds County, over the objection of John Kabbes (Kabbes), found that funds held in the court registry in the amount of $47,858.74 were wrongful-death benefits. The chancery court found that an antenup-tial agreement between Burns and Martha Kabbes Burns (Martha), the deceased, had no bearing on the settlement of the wrongful-death claim. Accordingly, the chancery court ordered the funds be turned over to Burns, who was a proper wrongful-death beneficiary.[1] Aggrieved by the chancery court’s ruling, Kabbes appeals. He presents the following two issues for this Court to consider:
I. Whether the chancellor erred in finding that the proceeds in the registry of the court were wrongful-death proceeds.
II. Whether the chancellor erred in finding that the antenuptial agreement between Martha and Burns had no bearing on the settlement of the wrongful-death claim.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On July 18, 2002, Martha died in a one-vehicle accident in Alabama. At the time, she was married to Burns, and she had three children from a prior marriage-Kabbes, Carmen Goforth, and Lila Strode.
¶ 3. Following Martha’s death, Kabbes filed suit on behalf of her wrongful-death beneficiaries against General Motors Company, Michelin North America, Inc., and Brakes Plus, Inc., d/b/a Scotty’s Tire & Automotive. Pertinent to the present appeal, Michelin filed its answer and denied all the allegations. According to Michelin, the tire was not defective. Instead, Michelin contended that any problem with the tire was caused by underinflation or overloading of the vehicle, and the proximate cause of Martha’s death was her failure to use a seatbelt and her act of opening the vehicle’s door during the accident.
¶ 4. After extensive discovery, Michelin and the parties to the lawsuit engaged in *1229 settlement negotiations. They submitted a settlement agreement to the chancery court in which they recognized that Michelin’s liability was doubtful and that any recovery from it was unlikely. The settlement agreement provided that Kabbes, Burns, and the two daughters would release all claims against Michelin, which, in return, agreed to pay a confidential sum. On June 30, 2004, the chancery court entered a decree approving of the settlement and ordering that any expenses arising from the death and the estate of Martha must be paid from the proceeds of the settlement.
¶ 5. On March 7, 2006, the chancery court ruled upon Kabbes’s Petition to Pay Over Escrow Funds and entered an order finding that the remaining settlement proceeds on deposit in the court’s registry, which totaled $47,858.74, were wrongful-death proceeds. Accordingly, the chancery court found that the antenuptial agreement between Martha and Burns had no bearing on settlement of the wrongful-death claim and that Burns had not waived his claim to payment of said funds. Kab-bes filed a motion for reconsideration, which the chancery court denied. Kabbes then timely filed the present appeal.
STANDARD OF REVIEW
¶ 6. The determination of wrongful-death beneficiaries is a question of law, and this Court will review such a determination under a de novo standard. Gonzales v. Gray, 824 So.2d 558, 561(¶ 10) (Miss.2002) (citing Estate of Jones v. Howell, 687 So.2d 1171, 1174 (Miss.1996)).
DISCUSSION
I. Wrongful-Death Proceeds
¶ 7. Kabbes first argues that the chancellor erred in finding that the settlement proceeds held in the court’s registry were wrongful-death proceeds. Kabbes argues that: (1) there was no wrong proven so as to qualify the settlement proceeds as wrongful-death proceeds, and (2) the chancellor lacked authority to find that the proceeds were wrongful-death proceeds because that was a fact issue for the jury to determine.
¶ 8. The cases cited by Kabbes in support of his argument are easily distinguishable from the present situation in that they all involve a wrongful-death case that was tried before a jury. He cites no case that holds that the proceeds from the settlement of a wrongful-death claim are not wrongful-death proceeds or that it is error to distribute the proceeds of a wrongful-death settlement to the wrongful-death beneficiaries.
¶ 9. The supreme court has long held that a “wrongful death action is not part of the estate of the deceased.” Pannell v. Guess, 671 So.2d 1310, 1313 (Miss.1996) (citing Partyka v. Yazoo Dev. Corp., 376 So.2d 646, 650 (Miss.1979)). “The wrongful death statute creates a new and independent cause of action in favor of those named in the statute.” Partyka, 376 So.2d at 650 (citing Hasson Grocery Co. v. Cook, 196 Miss. 452, 459, 17 So.2d 791, 792 (1944)). Pannell involved the settlement of a doubtful claim and determination of wrongful-death beneficiaries. Pannell, 671 So.2d at 1312. The supreme court found no merit to the appellants’ claim that the chancery court should have held a hearing to determine how to divide the wrongful-death proceeds. Id. at 1314. According to the opinion, the case started out as a wrongful-death action, but no wrongful-death suit was filed because a settlement was reached with the driver’s insurer. Id. at 1313. Nevertheless, the *1230 supreme court found no error with the distribution of the settlement proceeds to the wrongful-death beneficiaries provided for in Mississippi Code Annotated section 11-7-13 (Supp.1991). Id. at 1314. The supreme court stated that the wrongful-death statute provides that the proceeds shall be distributed equally among the wrongful-death beneficiaries. Id.
¶ 10. In Gonzales, 824 So.2d at 559(¶ 1), the supreme court also dealt with the settlement of a doubtful claim regarding a wrongful-death suit. The issue before the supreme court was whether Mississippi or Arkansas substantive law controlled the distribution of the wrongful-death settlement proceeds. Id. at 561 (¶¶ 9, 12). In a de novo review of the issue, the supreme court reversed the chancery court and found that the Mississippi wrongful-death statute was controlling as to the settlement of the doubtful wrongful-death claim. Id. at 560(¶ 6).
¶ 11. As shown in the previous cases, Mississippi courts have regularly distributed the proceeds of wrongful-death settlements to the wrongful-death beneficiaries. This has been the case even when the parties settled a doubtful claim. Therefore, we find no error with the chancellor’s determination that the proceeds in the court’s registry were wrongful-death proceeds. This issue is without merit.
II. Antenuptial Agreement
¶ 12. As pointed out by Kabbes in his brief, “[a]n antenuptial contract is just as enforceable as any other contract.” Mabus v. Mabus, 890 So.2d 806, 818(¶ 53) (Miss.2003). The section of the antenup-tial agreement, which Kabbes argues now bars Burns’s recovery, states the following:
Each of the parties hereto agree that on the death of the other, the surviving party will not have and will not in any way assert any claim, interest, estate or title of any kind or nature whatsoever in or to any property, real, personal, or mixed, of which the other party may die seized and possessed....
Kabbes argues that under the quoted provision, “Burns relinquished any right to recover many of the damages allowed pursuant to the Mississippi wrongful death statute.” Burns does not dispute the validity of the antenuptial agreement. However, he argues that the chancellor was correct in holding that the antenuptial agreement had no bearing on the settlement because wrongful-death proceeds do not enter the deceased’s estate, and they are distributed pursuant to the wrongful-death statute.
¶ 13. Regarding the nature of a wrongful-death claim, the supreme court has stated that “Mississippi’s wrongful death statute creates a cause of action unknown to the common law, and we have held that the statute must be strictly construed. The wrongful death statute creates a new and independent cause of action in favor of those named therein.” Estate of Jones v. Howell, 687 So.2d 1171, 1178 (Miss.1996) (citations omitted) “Mississippi’s wrongful death statute, Miss.Code Ann. [section] 11-7-13, created a cause of action unknown to the common law. The wrongful death action is not part of the estate of the deceased, and only those individuals listed in the wrongful death statute may bring this independent cause of action.” Pannell, 671 So.2d at 1313 (citations omitted). Accordingly, Burns is correct in his argument that the wrongful-death proceeds do not enter the estate of the deceased. However, it is not only the wrongful-death proceeds but the wrongful-death action itself that does not enter the *1231 estate. “[A] wrongful death suit is a derivative action by the beneficiaries, and those beneficiaries, therefore, stand in the position of their decedent.” Carter v. Miss. Dep’t of Carr., 860 So.2d 1187, 1192(¶ 17) (Miss.2003). Nevertheless, as stated by the supreme court, only the wrongful-death beneficiaries may bring a wrongful-death claim. While the action is derivative in that it is a claim for damages that could have been recovered by the deceased, the action itself arises upon the deceased’s death and belongs to the wrongful-death beneficiaries. Therefore, the antenuptial agreement had no bearing on the wrongful-death claim or on the distribution of the proceeds received from settling that claim.
¶ 14. As for the expenses of the estate, Mississippi Code Annotated section 11-7-13 (Rev.2004) provides that “an amount, as may be recovered for property damage, funeral, medical or other related expenses shall be subject only to the payment of the debts or liabilities of the deceased for property damages, funeral, medical or other related expenses.” Recognizing this, in the decree approving of the settlement, the chancellor provided that the petitioner, Kabbes, was authorized to pay any estate expenses and any approved attorney’s fees from the proceeds of the settlement. Therefore, any claim that Burns’s recovery should be reduced for such expenses is without merit.
¶ 15. Additionally, Kabbes argues that the antenuptial agreement should have precluded Burns from recovering any damages intended to compensate the deceased, such as lost wages and pain and suffering. However, when section 11-7-13 states that all wrongful-death proceeds “shall be distributed equally,” it makes no distinction between proceeds attributable to the deceased or to her wrongful-death heirs. In applying section 11-7-13, the supreme court found that “the wrongful death statute does not provide that the lower court may conduct a hearing to determine how to divide the proceeds.” Panned, 671 So.2d at 1314.
¶ 16. In making his argument, Kabbes misconstrues the supreme court’s analysis of wrongful-death benefits in River Region Medical Corp. v. Patterson, 975 So.2d 205, 208(¶ 10) (Miss.2007) (citing Long v. McKinney, 897 So.2d 160, 169 (¶¶ 32-33) (Miss.2004)). Kabbes argues that any damages “intended to compensate the decedent for her individual loss” — damages for lost wages and the pain and suffering— should be recovered by the estate. However, we can find no such holding in Patterson. In analyzing Patterson’s claim, the supreme court stated the following:
“[Tjhere are several kinds of damages which may be pursued, and these damages are not due to the same claimants.” “For instance, the estate is entitled to recover funeral costs and final medical expenses. The beneficiaries are entitled to recover for their respective claims of loss of society and companionship. The wrongful-death beneficiaries are entitled to recover the present net cash value of the decedent’s continued existence.” Assuming Thomas Patterson was a legitimate wrongful-death beneficiary, as we must do in giving him all reasonable inferences, he would then be entitled to recover for himself any loss of society and companionship he might prove, and to share equally in the damages which might have been recovered by Ms. Nettles, “had death not ensued.”
Id. (internal citations omitted). The Patterson court concluded that the deceased’s wrongful-death beneficiaries would share equally in all of the damages except those *1232 for loss of society and companionship. Id. at (¶ 11).
¶ 17. Therefore, the holding in Patterson is contrary to Kabbes’s argument in that Patterson provides that the damages recovered from the claims attributable to the deceased are those that section 11-7-13 requires to be divided equally among the wrongful-death beneficiaries. Any damages awarded for medical or funeral expenses are attributable to the estate, and the chancellor provided for such in the decree approving the settlement. The only claims that were personal to the claimants were claims for loss of society and companionship. Such a claim is, by its very nature, personal to the claimant, and it would not be recoverable by the deceased’s estate.
¶ 18. The chancellor had previously authorized Kabbes to pay estate expenses with the settlement award. With the claim belonging to the wrongful-death beneficiaries and no further damages passing to Martha’s estate, we find no error with the chancellor’s determination that the antenuptial agreement between Martha and Burns had no bearing on the disbursement of the settlement proceeds remaining in the court’s registry. We find that this issue is without merit.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. Marlha’s children had already received their shares of the wrongful-death settlement proceeds. The amount remaining in the court’s registry represented the amount attributable to Burns.