KING, Justice,
concurring in part and . dissenting in part:
¶ 69. I disagree with the contention that the chancellor had no jurisdiction to divide the damages for loss of society and companionship unequally. I also disagree with the plurality’s analysis on the issue of attorneys’ fees. However, because I agree with the equal division of damages in this particular case, I concur with that portion of the result, as well as with its conclusion that damages for loss of society and companionship may be divided unequally in wrongful death cases.

1. Chancery Court Jurisdiction

¶ 70. I believe that a chancery court, under certain limited circumstances such as the case before us today, has the jurisdiction to apportion damages amongst the beneficiaries. Chancery courts have full jurisdiction in “[a]ll matters in equity,” “[m]atters testamentary and of administration,” and “[m]inor’s business.” Miss. Const, art. 6, § 159. Thus, the chancery court clearly had jurisdiction over approving and dividing the settlement at issue.[36] *876 This Court has held that once a chancery-court’s equity jurisdiction has attached, it has the discretion to award legal and punitive damages. Derr Plantation, Inc. v. Swarek, 14 So.3d 711, 716 (2009). Certain legal claims may lie within the pendent jurisdiction of the chancery court, once its original jurisdiction has attached.[37] Id.
“[T]he Chancery Court having taken jurisdiction on any one ground of equity, will thereupon proceed in the one suit to a complete adjudication and settlement of every one of all the several disputed questions materially involved in the entire transaction, awarding by a single comprehensive decree all appropriate remedies, legal as well as equitable, although all the other questions involved would otherwise be purely of legal cognizance .... having taken jurisdiction the power of the court to administer full relief is limited by nothing but justice itself.”
Id. (quoting McClendon v. Miss. State Highway Comm’n, 205 Miss. 71, 38 So.2d 325, 327 (1949)). Thus, the chancery court in this case had the power to consider and divide the damages for loss of society and companionship unequally. See Ill. Cent. R. Co, v. Nelson, 245 Miss. 395, 146 So.2d 69 (1962) (wrongful death action tried in chancery court, which determined damages).
¶ 71. However, while I believe that loss of society and companionship damages may be divided unequally, and that it was within the jurisdiction -of the chancery court in this case to do so, I agree with the chancellor’s ultimate decision to divide the damages equally in this" case. As noted, damages which would have been recoverable by the decedent had death not ensued are shared equally amongst the wrongful-death beneficiaries, while damages for loss of society and companionship are individual to each wrongful-death beneficiary. The $250,000 settlement in this case was for “all claims” and the counterclaim appears to focus on damages that would have enured to the benefit of the decedent had death not ensued, stating that “[t]he injuries suffered by Dane Eubanks in the collision in issue resulted in compensable damages for pain, suffering, mental anguish, medical expenses, funeral expenses, loss of future earnings and other damages.”[38] Nothing in the record before us indicates which portion of the settlement, if any, was designated as compensation for damages recoverable by Dane had death not ensued, and which portion of the settlement, if any, was for the purpose of compensating the beneficiaries for their individual claims of loss of society and companionship.[39] Without any indication as to which *877 type of damages the settlement encompasses, I cannot say that the chancellor abused her discretion or was- manifestly wrong by dividing the entire settlement equally among the beneficiaries, especially since the record indicates that the damages were more likely of the type that the decedent would have recovered had death not occurred. However, I emphasize my belief that the chancery court in this case did have the jurisdiction to divide the damages unequally, and should have done so had the record indicated which' portion of the settlement was designated to compensate for loss of society and companionship.
2. Attorneys ’ Fees
¶72. I disagree with the plurality’s analysis regarding attorneys’ fees. The plurality finds that Kiyhet and Castigliola did not perfdrm services for Allison and David Jr.[40] The attorneys’ goal in settling the doubtful claim was to maximize settlement, without regard to how that settlement would ultimately be distributed. As in Parnell v. Guess,, after the settlement was made with the insurance company, the parents attempted to exclude the half-siblings from sharing in that settlement. Pannell v. Guess, 671 So.2d 1310, 1312 (Miss.1996). Then, the half-siblings “hired their own attorney to represent them in any further matters dealing with the distribution of the wrongful death proceeds.” Id. (emphases added). The Court still remanded for a determination of whether the contingency fee in the contract not signed by the half-siblings was reasonable, since the half-siblings derived a benefit from the attorney’s efforts and acquiesced to the settlement amount. Id.- at 1315. It further found that if the chancellor “should find that the contingéney fee was not reasonable under the facts of this case, then he may assess a fee based on quantum meruit.” Id. Certainly, in the case at hand, Kiyhet and Castigliola should not receive any payment from Allison and David Jr. for their work on how to distribute the proceeds of the settlement, as, in this regard, they worked against the interests of Allison and David- Jr. However, Kiyhet and Castigliola obtained the settlement for the benefit;of all who were to share in it, which ultimately-included Allison and David Jr. And Allison and David Jr. derived benefit from the efforts of Ki-yhet and Castigliola, and did not object to the settlement amount. Thus, Kiyhet and Castigliola did perform services for Allison and David Jr., as they provided services to maximize the settlement for any and all who were to share in the proceeds. Only after the settlement was maximized to the benefit of all sharing in the proceeds[41] did Kiyhet and Castigliola take positions adverse to Allison and David Jr.[42] The plurality would have Allison and David Jr., ■ one of whom had' no relationship to the deceased and the other who had little or *878 no relationship with him, and neither of whom endeavored to spend the money to defend the suit from which this settlement arose, reap the full financial benefit of the settlement without paying the attorneys who achieved that settlement for them.
¶ 73. In sum, I generally agree with the Court of Appeals’ analysis regarding attorneys’ fees chargeable to Allison and David Jr. However, I do believe that the Court of Appeals may have overstated the amount of attorneys’ fees that should be deducted. It found that “the chancellor deducted no legal costs incurred by the attorneys herein' in pursuing claims and positions in federal court during the second wrongful-death claim, related negotiations, and the federal court motion to clarify in an attempt to exclude David Jr. and Allison from sharing in the $250,000 Allstate settlement proceeds.” Eubanks, 197 So.3d at 892, 2014 WL 211730, at *13. To be certain, attorneys’ fees associated with the motion to clarify in federal court should be deducted. However, Allison and David Jr. clearly derived a benefit from the settlement negotiations with Allstate pursuant to the federal court action. See Franklin v. Franklin ex rel. Phillips, 858 So.2d 110, 123 (Miss.2003). During the settlement negotiations, the objective of Kiyhet and Castigliola was to maximize the monetary amount of the settlement. While they did raise concerns about Allison and David Jr. sharing in the settlement, Allstate refused to address those concerns and all parties agreed that the chancery court would decide the issue of the division of the settlement. Thus, unless the evidence on remand indicates otherwise, only attorneys’ fees and expenses incurred after the federal court settlement negotiations should be deducted from the calculation of Allison and David Jr.’s portion of those legal costs.
¶ 74. I believe that the chancery court was correct in determining that Allison and David, Jr. owed attorneys’ fees in some amount, and dissent to the part of the plurality’s finding that they owe nothing. I would remand the case for further determinations on this issue.
RANDOLPH, P.J., AND CHANDLER, J., JOIN THIS OPINION. KITCHENS, J., JOINS THIS OPINION IN PART.

. The opinion of the Court states that the chancellor did not have the power or authority to divide the proceeds of the settlement unequally. Taken to its logical conclusion, this view leads to the conclusion that the chancellor did not have the authority to divide the settlement at all, equally or unequally, nor award any of the settlement to the half-siblings, because the settlement was not the result of a jury verdict. Indeed, the chancellor had jurisdiction over the case primarily due to its retention of the matters of the estate, As the estate argued, the half-siblings were not heirs. How then, under such a view, did the chancellor have any authority at all to divide the settlement amongst non-heirs? The plurality also opines that a "chancellor who is asked to distribute the proceeds must distribute them according to the terms that were decided by the jury or, as here, by *876 the parties to the settlement." Op, at ¶ 26. The terms agreed to by the parties to the settlement stated that the chancellor would determine the distribution of damages, not that the damages were to be distributed equally,'

. This concept promotes judicial economy, so that, in the rare cases in which chancery court jurisdiction overlaps circuit court jurisdiction, the parties do not have to try two cases in two different courts, Moreover, in cases such as .the one before us today, this concept promotes settlement. If parties cannot have a settlement divided unequally in chancery court, but can in circuit court only after filing a lawsuit, they will be more in-dined to file a lawsuit than resolve the issue out of court.

. Cecilia also vociferously argued that the settlement was an asset of the Estate, not a wrongful-death settlement, which would indicate that the settlement was for damages Dane would have recovered had death not ensued.

. The chancery court even allowed the parties to proffer evidence regarding an unequal distribution of damages. Cecilia and Seth proffered evidence regarding, their loss of society. and companionship damages, but no one presented any evidence regarding the *877 amount of other types of damages encompassed by the settlement.

. It is undisputed that David Jr. never even met Dane, as'he had'not yet been born when Dane passed away. It appears that Allison, who was one year old at the time,of Dane’s death and who lived with the same father who was found by the chancery court to not •have been involved in Dane's life,>had.little-to-no involvement with Dane. Yet, these children, through their mother, seek monetary compensation for Dane's death.

. Even Huber admits in her original brief that it was "immediately after” obtaining the settlement that Kiyhet and Castigliola took positions adverse to Allison and David Jr.

. Indeed, the iri the federal court case, Allstate filed a suit against the Estate and the Cecilia, and Kiyhet and Castigliola defended the suit and counterclaimed, Allison and David Jr. did not endeavor to spend the money to help defend the affirmative suit by Allstate against the Estate.