GRIFFIS, P.J., DISSENTING:
 

 ¶ 72. Mississippi Code Annotated section 11-7-13 (Rev. 2004) is the sole controlling authority to determine who is entitled to take the proceeds from a wrongful death action.
 

 ¶ 73. The lead opinion makes two conclusions that I find are fundamentally flawed. First, the lead opinion agrees that "Perkins's other children cannot recover wrongful death benefits through the deceased child, Delvyn, because Perkins does not meet the requirements of section 91-1-15 (3)(a)-(c)."
 
 Ante
 
 at ¶ 26. Second, the lead opinion concludes:
 

 As acknowledged by the chancellor, the Mississippi Supreme Court has established that the natural father of an illegitimate child, as well as the father's "kindred," can inherit under the wrongful death statute only if the father meets the requirements of section 91-1-15.
 
 Patterson
 
 , 798 So.2d at 350 (¶ 17) ("The wrongful death statute provides for illegitimates to inherit, but that right is tied to [ section] 91-1-15.").
 

 Ante
 
 at ¶ 27.
 

 ¶ 74. Neither of these conclusions are supported by section 11-7-13. Instead, the chancellor and the lead opinion rely on
 
 Patterson
 
 . The question is whether the decision in
 
 Patterson
 
 should govern this case, when it is contrary to the clear and unambiguous language of section 11-7-13.
 

 ¶ 75. Every wrongful death case, and the consideration of section 11-7-13, must start with
 
 Long v. McKinney
 
 ,
 
 897 So.2d 160
 
 (Miss. 2004). There, the supreme court criticized its earlier decisions in wrongful death cases, which included
 
 Patterson
 
 , and ruled:
 

 No area of the law has historically provided more muddled, misquoted and misunderstood procedural rules, than civil claims for wrongful death.
 

 The blame for the perennial scrap over the rules can be traced to at least two sources.
 

 First, although the issue has been debated, the American judiciary - federal and state - has failed to squarely address the question of whether substantive claims for wrongful death originated in the common law, rendering them subject to substantial judicial discretion; or are creatures of statute, requiring strict, statutory construction.
 

 Secondly, it appears that in the waning years of the Nineteenth Century, our own wrongful death statute (the "Statute") took a wrong turn into procedural territory where it had no license to travel. When one branch of government (well-intentioned though it may be) crosses the line into the purview of another, the balance of powers necessary for efficient and effective government is upset. So it was with the Statute. As a result,
 

 this Court has, for over a century, attempted to provide procedural guidance mislabeled as statutory interpretation; much like attempting to place a square peg into a round hole. Consequently, little progress has been made in settling many troubling issues related to wrongful death litigation. The same issues and problems continually appear, and have been addressed on an ad hoc basis, leaving little in the way of dependable precedent
 

 .
 

 Id.
 

 at 162-63
 
 (¶¶ 1-3) (emphasis added). The court then used
 
 Long
 
 as "an opportunity to address and clarify several of these problems, and to provide guidance for these issues to the bar and judiciary."
 

 Id.
 

 at (¶ 4).
 

 ¶ 76. Here, the issue addressed was not an issue addressed in
 
 Long
 
 . But, like
 
 Long
 
 , this case considers an issue that was previously "muddled, misquoted and misunderstood."
 

 Id.
 

 at (¶ 1). Indeed, this case is an opportunity to deal with one of those "troubling issues related to wrongful death litigation."
 

 Id.
 

 at (¶ 3). I urge the supreme court to look closely at this case and provide "dependable precedent."
 

 Id.
 

 ¶ 77. Any review of section 11-7-13 begins with the supreme court's long held admonition that, "[o]n appellate review, we
 

 strictly construe
 

 Mississippi's wrongful death statute."
 
 Pannell v. Guess
 
 ,
 
 671 So.2d 1310
 
 , 1313 (Miss. 1996) (emphasis added).
 

 ¶ 78. The language of section 11-7-13 determines who may take the proceeds of a wrongful death action:
 

 [I]f the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death....
 

 There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree. The provisions of this section shall apply ... to the mother on account of the death of an illegitimate child ..., and they shall have all the benefits, rights and remedies conferred by this section on legitimates.
 

 The provisions of this section shall apply ... to the natural father on account of the death of the illegitimate child ..., and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
 

 (Emphasis added).
 

 ¶ 79. Because Delvyn had "no husband, nor wife, nor children," section 11-7-13 provides that "the damages shall be distributed equally to [Delvyn's] father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death." This sentence gives Delvyn's "brothers and sisters" - Lisa, Kim and Alan - equal right to the wrongful death damages as Delvyn's mother and father.
 

 I. Mother
 

 ¶ 80. Roshida Nelson, as Delvyn's mother, is certainly a wrongful death beneficiary under section 11-7-13.
 

 II. Father
 

 ¶ 81. Robert Perkins, as Delvyn's father, may be a wrongful death beneficiary. For Robert Perkins to take as a wrongful death beneficiary, section 11-7-13 says that:
 

 The provisions of this section shall apply ...
 

 to the natural father
 

 on account of the death of the illegitimate child ..., and they shall have all the benefits, rights and remedies conferred by this section on legitimates,
 

 if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
 

 (Emphasis added).
 

 ¶ 82. Section 11-7-13 specifically incorporates section 91-1-15, but only in the analysis of the "natural father." It clearly says that "the provisions of this section shall apply ...
 

 to the natural father on account of the death of the illegitimate child
 

 ... if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15." (Emphasis added). This sentence only applies to Perkins, as
 Delvyn's natural father. This sentence in section 11-7-13 cannot be read to require section 91-1-15 be applied to anyone but Delvyn's natural father.
 
 This sentence simply does not apply
 
 to Delvyn's mother or his brothers and sisters.
 

 ¶ 83. Section 11-7-13 says that, for Perkins to be a wrongful death beneficiary as Delvyn's father, Perkins must also show that he has acted in a socially responsible manner. Thus, as the natural father of an illegitimate child, Perkins must establish that he can "establish[ ] the right to inherit from the deceased under Section 91-1-15."
 

 ¶ 84. Section 91-1-15 deals with the right to inherit from illegitimate children. It is in the title on "Trusts and Estates," the chapter on "Descent and Distribution," and is titled "Descent among illegitimates; definitions." If section 11-7-13 was intended to be interpreted as the lead opinion has, the legislature could have simply incorporated the laws of descent and distribution to establish the wrongful death beneficiaries in a wrongful death action.
 
 [13]
 
 This is not what the legislature did. It is important that the Legislature, in section 11-7-13, chose not to treat the "kindred" of the natural father the same as it did in 91-1-15(3)(d)(i).
 

 ¶ 85. Section 11-7-13 requires that the decedent's "natural father" be subject to an analysis of the right of inheritance under section 91-1-15. As a result, section 11-7-13"addresses the inequity of a natural father of an illegitimate child benefitting from a wrongful-death action when he has failed to acknowledge and support his child."
 
 LePori v. Welch
 
 ,
 
 93 So.3d 66
 
 , 69 (¶ 9) (Miss. Ct. App. 2012).
 

 ¶ 86. I concur with the determination that, under section 11-7-13, the chancellor correctly considered Perkins's right to inherit from Delvyn under section 91-1-15. I agree that Perkins is not a proper wrongful death beneficiary of Delvyn under section 11-7-13.
 

 III. Siblings
 

 ¶ 87. Section 11-7-13 requires that Delvyn's half siblings are his wrongful death beneficiaries. Because Lisa, Kim, and Alan share a biological father, they are Delvyn's half siblings.
 

 ¶ 88. Section 11-7-13 requires that Delvyn's wrongful death damages "shall be distributed
 

 equally
 

 to the father, mother,
 

 brothers and sisters
 

 , or such of them as the deceased may have living at his or her death." (Emphasis added). The next sentence provides that "[t]here shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree."
 
 Miss. Code Ann. § 11-7-13
 
 . Thus, Lisa, Kim, and Alan are
 

 required by the wrongful death statute
 

 to be treated no differently than Delvyn's mother.
 

 ¶ 89. The lead opinion affirms the chancellor's ruling that "Perkins's other children cannot recover wrongful death benefits through the deceased child, Delvyn, because [Perkins] does not meet the requirements of section 91-1-15 (3)(a)-(c)." There is simply no authority in section 11-7-13 to support this conclusion.
 

 ¶ 90. Here, Lisa, Kim, and Alan have been excluded as Delvyn's wrongful death beneficiaries simply because Perkins was excluded under section 91-1-15. Although there is specific statutory language that says Delvyn's natural father may be excluded pursuant to section 91-1-15, there is no language that would exclude Delvyn's siblings.
 

 ¶ 91. Lisa, Kim, and Alan are "half blood" siblings of Delvyn. Thus, they are Delvyn's
 

 statutory
 

 wrongful death beneficiaries as Delvyn's "brothers and sisters." They obtained the status as his wrongful death beneficiaries due to their blood relationship with Delvyn. Section 11-7-13 clearly and specifically provides that "[t]here shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree."
 

 ¶ 92. Section 11-7-13 provides that Delvyn's father may be excluded under section 91-1-15, but section 11-7-13 may not be read to exclude or condition Delvyn's half siblings' rights to their common parent's (the natural father's) status.
 

 ¶ 93. I am of the opinion that chancellor's exclusion of Lisa, Kim, and Alan was manifestly wrong and clearly erroneous. I would reverse the judgment that concludes Lisa, Kim, and Alan are not proper wrongful-death beneficiaries under section 11-7-13 and remand for a hearing on the issue of whether Lisa, Kim, and Alan were Delvyn's half siblings and are therefore entitled to a portion of the settlement proceeds.
 

 WESTBROOKS AND TINDELL, JJ., JOIN THIS OPINION IN PART.
 

 For example, section 91-1-15(3)(d)(i) provides that "
 

 The natural father of an illegitimate and his kindred
 

 shall not inherit: From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child ...." (Emphasis added).